## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DARREN OLIVER ROBINSON,**

    **Petitioner,**

  **v.**        **Civil Action No. 3:08cv184**
             **Criminal Action No. 3:04cr52**
**UNITED STATES OF AMERICA,**   **(JUDGE BAILEY)**

    **Respondent.**

## REPORT AND RECOMMENDATION[1]

## I. INTRODUCTION

On December 1, 2008, the *pro se* petitioner filed a Petitioner's Memorandum Of Law and Points and Authorites [sic] In Support oh [sic] His Motion To Vacate, Set Aside or Correct His Sentence Pursuant To Title 28 U.S.C. § 2255 (Dkt.# 77), without having filed a § 2255 motion. Since petitioner's intent was unclear,[2] the Court notified him (Dkt.# 79) of its intent to recharacterize his memorandum as a  Motion To Vacate, Set Aside or Correct His Sentence Pursuant To Title 28 U.S.C. § 2255.  Accordingly, it sent him an election form to sign, indicating whether he wanted it recharacterized, or whether he wanted to proceed with it as it was filed.  On December 18, 2008, the petitioner's election form was received and filed by the Court, converting his motion his

---

[1] Due to a docketing error, petitioner's instant § 2255 motion was inadvertently originally filed under the civil action number of his previous § 2255 motion (3:05cv41), dismissed as premature in 2007.  The docketing error was not discovered until after a Report and Recommendation, recommending the denial and dismissal of the instant § 2255 motion was entered on August 16, 2010 (3:04cr52, Dkt.# 99).  An Order has been entered this day, directing that that R&R be terminated to correct the error in the civil docket, and this R&R is being re-entered under the correct civil action number (3:08cv184).

[2] Petitioner had previously filed a prior 28 U.S.C. § 2255 motion (Dkt.# 37) on May 5, 2005 that was dismissed without prejudice as premature because of a pending appeal (Dkt.# 59 and #60).

memorandum of law to a § 2255 motion.[3]

The Government was ordered to answer petitioner's Motion Under 28 U.S.C. § 2255 on January 6, 2009. (Dkt.# 86). The Government filed its Response on February 4, 2009. (Dkt.# 88). On February 26, 2009, Petitioner filed a Motion for Extension of Time to File a Reply to the Government's Response (Dkt.# 94), along with a Memorandum in Support (Dkt.# 94-1), requesting a 30-day extension of time. By Order dated March 11, 2009, this Court granted petitioner's motion. (Dkt.# 96). Despite the grant of an extension, Petitioner never filed a Reply.

## II. FACTS

### A. Conviction and Sentence

Petitioner was named in a five count indictment issued by a grand jury sitting in the Northern District of West Virginia on July 21, 2004. Count One charged that petitioner conspired to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Counts Two, Three and Four charged petitioner with distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(C). Count Five was a forfeiture charge, asserting that Petitioner shall forfeit any and all property derived from any proceeds of the alleged narcotics violations or intended to be used to facilitate the commission of those violations.

On October 1, 2004, petitioner pled guilty to Count Four of the indictment, which charged him with distributing 3.34 grams of crack cocaine in violation of Title 21, United States Code, Section 841(a)(1). On February 16, 2005, petitioner was sentenced to 202 months imprisonment to be followed by three years of supervised release.

_____

[3] Due to a typographical error in the original election form, on December 19, 2008, an order was entered, directing that an amended election form be sent, correcting the error to clarify the record. (Dkt.#83). Petitioner returned the signed amended election form on January 2, 2009. (Dkt.# 84).

In the plea agreement, the parties stipulated to a total drug relevant conduct of 217.8 grams of cocaine base, also known as crack. Additionally, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 10.     Defendant is aware that Title 18, Untied States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

On October 1, 2004, the petitioner entered his plea in open court. Petitioner was sworn and testified that: he was twenty-five years old; could read, write and understand English; had gone as far as the 11th grade in school but had since obtained a GED; had not consumed any medicine, drugs or alcohol within the previous 24 hours; and understood that the oath he had taken meant he must tell the truth. He further denied ever having had treatment for mental illness or drug addiction and denied having any hearing impairment or other physical disability that would prevent his full participation in the hearing. (Plea transcript, Dkt.# 62 at 3 - 5). Petitioner answered "yes" when asked if he understood that he should feel free to ask the Court for an explanation of its questions or seek advice of counsel before answering any of them. (Id. at 4). The Assistant United States Attorney ("AUSA") summarized the plea agreement aloud in open court and specifically stated that Paragraph 10 waived petitioner's appellate and collateral attack rights. (Id. at 10).

The Court then verified petitioner's understanding that he was giving up the majority of his appellate rights and then detailed those rights, noting specifically that petitioner was waving the right to file a habeas corpus petition challenging the legal validity of his guilty plea and sentence. (Id. at 14). The Court inquired of petitioner whether he understood that the U.S. Sentencing Guidelines would play the most important role in determining his sentence, and petitioner answered "yes." When asked if he had discussed the various considerations applicable to his situation under the Guidelines with his attorney, petitioner said that he had. (Id. at 18 - 19). When asked by the Court if he understood that he could not receive a sentence greater than the statutory maximum of up to 20 years, petitioner said "yes, sir." (Id. at 19). The Court asked petitioner if he understood that no one could predict what his sentence would be until after the PreSentence Investigation Report ("PSR") was completed, and that the sentence he ultimately received might be different than any estimate petitioner or his lawyer might have calculated, and petitioner said 'yes' to both. (Id. at 19). When asked if he knew that under the concept of 'relevant conduct,' in determining his total offense level for sentencing purposes, the Court could take into account any conduct, circumstances, and injuries relevant to the crimes he may have convicted, petitioner said 'yes." (Id. at 19 - 20). The Court asked petitioner if he also understood that the Court had the authority to depart from the Guidelines under certain circumstances and impose a sentence longer or shorter than that called for by the Guidelines and petitioner said "yes." (Id. at 20.

The Court then advised petitioner of all the rights he was giving up by pleading guilty, including a reiteration that he was waiving a majority of his appellate rights. (Id. at 20 - 23). Petitioner stated that he understood the consequences of entering a guilty plea. (Id. at 23). Petitioner's lawyer, when asked by the Court whether he had reviewed the plea agreement in detail

with petitioner, and whether he believed petitioner understood the plea agreement, answered "I have, and I do, Your Honor." (Id.).

To establish a factual basis for the plea, the Government presented the testimony of Ted Snyder of the Berkeley County Sheriff's Department and the Eastern Panhandle Drug and Violent Crimes Task Force. (Id. at 24 - 27). The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 4 of the indictment. (Id. at 27). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 27). He denied that anyone had promised or predicted the exact sentence he would receive. (Id. at 28). He testified that he understood no one could know at that time what his exact sentence would be until the PSR was complete. (Id.) The petitioner testified that his attorney had done a good job representing him, and that his attorney had left nothing undone. (Id.). Finally, petitioner stated that he was in fact guilty of the crime to which he was pleading guilty. (Id.).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily; that the petitioner understood the consequences of pleading guilty; and that the elements of the crime were established beyond a reasonable doubt. (Id. at 28 - 29). The petitioner did not object to the Court's finding.

A sentencing hearing was held February 14, 2005. During the hearing, through counsel, petitioner entered an objection to the PSR, vigorously contesting a potential career criminal enhancement to his sentence, which the Court overruled as moot. (Dkt. # 61 at 9). Next, the

Government objected to the probation officer's failure to assess petitioner with an enhancement for obstruction of justice and the Court overruled that objection as well. (Id. at 9 -13). The petitioner declined the opportunity to allocute. (Id. at 15). Defense counsel argued for a sentence at the lower end of the Guidelines. (Id. at 15 - 20). The Government, after discussion of petitioner's extensive criminal history, advised the Court that petitioner had been forthright and truthful. (Id. at 20 - 22). The Government moved to dismiss the remaining Counts of the indictment, made a recommendation for a two-level reduction for acceptance of responsibility and for a sentence at the lower end of the Guidelines. (Id. at 22 - 23). After considering several factors, including the circumstances of both the crime, the defendant's extensive criminal history, his attempted flight to avoid apprehension, and the sentencing objectives of punishment, the Court declined to grant petitioner the minimum Guideline sentence, and instead, sentenced him to 202 months imprisonment to be followed by three years supervised release, payment of a $1,000 fine, and a $100 special assessment. (Dkt.# 61 at 27 - 28). The Judgment and Commitment Order was entered February 16, 2005. (Dkt.# 32).

**B.** **Appeal**

Petitioner filed a notice of appeal of his conviction and sentence on April 6, 2005. On July 28, 2005, the Fourth Circuit Court of Appeals found that he had failed to timely file his notice of appeal within ten days from the date of judgment. However, the Court noted that the district court could grant petitioner a thirty-day extension, upon a showing of excusable neglect or good cause. Therefore, the case was remanded to the district court to determine whether petitioner could establish either, to warrant an extension of the ten-day appeals period. (Dkt.# 42).

On February 1, 2006, the district court directed petitioner to show excusable neglect. After four hearings on the matter, the district court determined that there had been a breakdown in

communication between petitioner and defense counsel, and that petitioner had intended to file an appeal. Accordingly, the district court determined that petitioner had established good cause or excusable neglect and granted him a thirty-day extension for filing his appeal. Petitioner's appeal was therefore deemed timely filed. A copy of that Order was transmitted to the Fourth Circuit Court of Appeal for further consideration of petitioner's appeal.

On appeal, in an <u>Anders</u>[4] brief,[5] petitioner contended that: 1) trial counsel was ineffective for failing to investigate his criminal history; 2) trial counsel was ineffective for failing to preserve an argument under <u>U.S. v. Booker</u>, 543 U.S. 220 (2005); and 3) he was denied due process by sentencing guidelines that provide for sentencing disparity of a 100:1 ratio of crack to powder cocaine.

On February 12, 2008, , the judgment of the district court was dismissed in part and affirmed in part by the Fourth Circuit in an unpublished *per curiam* opinion.[6] (Dkt.# 68). Mandate issued on March 5, 2008. (Dkt.# 71). Petitioner did not file a petition for a writ of *certiorari* with the United States Supreme Court.

## C.    Other Collateral Proceedings

On April 25, 2008, petitioner filed a *pro se* Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense pursuant to 18 U.S.C. 3582.[7] (Dkt.# 73). Counsel was appointed on his behalf, and on February 20, 2009, the District Court entered an Order granting

---

[4] <u>Anders v. California</u>, 386 U.S. 738 (1967).

[5] Petitioner was advised of his right to file a pro se supplemental brief but did not do so.

[6] The Fourth Circuit found that petitioner's sentencing claim fell squarely within the terms of his appellate waiver and dismissed it; it further found that his remaining claims of ineffective assistance of counsel were not cognizable on direct appeal.

[7] Petitioner's motion was titled as "Motion for Modification of Sentence and Supporting Memorandum."

the petitioner's motion(Dkt.# 91) and reducing his sentence from 202 months to 162 months.  <u>Id</u>.

**D.**     **Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 77)**

Petitioner's claims are reorganized here for the sake of clarity:

1) His 202 month sentence violates due process;

2) he can establish cause and prejudice to show he is "actually innocent of the sentence imposed;"and

3) his 202-month sentence violated the holding in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).

4) Counsel was ineffective because:

     a) he was ignorant of the Sentencing Guidelines;

     b) he did not sufficiently investigate petitioner's career offender criminal history;

     c) he permitted petitioner to be charged with over 200 grams of cocaine when petitioner had only pled to less than 5 grams of cocaine;

     d) he tricked petitioner into a guilty plea by promising him he would receive a 108-month sentence;

     e) at sentencing, he permitted petitioner's sentence to be unconstitutionally enhanced; and

     f) he failed to file a notice of appeal on petitioner's behalf.

5) Petitioner is a victim of an "unprofessional attorney" and requests leave to be permitted to file an appeal out of time.

**Government's Response (Dkt. # 88)**

The Government contends that all of petitioner's complaints can be reduced to four:[8]

1) petitioner only entered a guilty plea because his lawyer misled him as to the length of the sentence he would receive;

2) his lawyer was unfamiliar with sentencing law;

3) his lawyer did not sufficiently investigate his career offender criminal history; and

4) the 202-month sentence imposed was unconstitutional as it violated the holdings of Blakley, *supra,* and Booker, etc.

Petitioner's claims should be dismissed because petitioner  knowingly, intelligently and voluntarily waived his right to bring a collateral attack incident to a valid plea agreement,  and petitioner's claims do not fall within the three exceptions recognized by the Court.  Petitioner's claims that his plea was not knowing and voluntary because it was only entered as a result of ineffective assistance of counsel lack merit as he offers no support for them other than his own repetitious and conclusory statements, not any evidence or facts.

Petitioner's claim that his attorney tricked him into his plea with the promise of a lower sentence is refuted by petitioner's own statements to the contrary at the Rule 11 hearing.  Further, petitioner was well aware, before sentencing, of the possibility of the sentencing enhancement and the effect on his sentence of the larger drug amount, based on the concept of relevant conduct, as they were in the plea agreement he signed and he again indicated his understanding of them in his Rule 11 hearing. Petitioner also testified at that hearing that no one had made any promises to him

---

[8] The Government contends that petitioner's fifth argument, that he should be granted leave to file an appeal out of time, must have been a "cut and paste" job from another inmate's pleadings, because petitioner's appeal has already been filed and decided.  "His request, therefore, makes no sense at all."

regarding a specific sentence and he was aware that no one could predict what his sentence would be, but that in any event, it could not be "greater than the statutory maximum." His 202 month sentence was well below the statutory maximum. Petitioner fails to sustain his burden of proof under Strickland, and cannot show cause or actual prejudice to excuse his failure to bring his claims in his direct appeal. Further, some of petitioner's claims were raised and rejected on appeal and are procedurally barred..

Finally, petitioner's claim that counsel was ineffective for failing to file a notice of appeal on his behalf demonstrates his "willingness to grossly distort the record in an effort to justify his false allegations." The District Court conducted hearings on this matter and found that no request for an appeal had ever been made, that counsel was not ineffective, and further, made a specific finding that there had simply been a breakdown of communication between petitioner and his counsel.

## E.     Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's § 2255 motion be denied and dismissed with prejudice from the docket because petitioner waived his right to file a § 2255 collateral attack and any of his ineffective assistance of counsel claims that fall outside of the waiver lack merit.

## III.  ANALYSIS

## A.     Petitioner's Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

**B.      <u>Waiver of Right to File § 2255 Collateral Attack</u>**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." <u>Id</u>. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." <u>United States v. Lemaster</u>, 403 F.3d 216, 220 (4th Cir. 2005).

In <u>United States v. Attar</u>, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." <u>Id</u>. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. <u>Id</u>. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." <u>Id</u>. Nor did the Court believe that a defendant "can fairly be

said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v.

Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.

Supp. 2d 489, 493 (E.D.Va. 2001)).  Nonetheless, the Court distinguished the types of IAC claims

available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims
> on direct review. Indeed, '[i]t is well settled that a claim of
> ineffective assistance should be raised in a 28 U.S.C. § 2255 motion
> in the district court rather than on direct appeal, unless the record
> conclusively shows ineffective assistance.' United States v. King,
> 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception
> recognized in Attar applies only to a very narrow category of cases.
> In contrast, a rule that defendants are unable to waive their right to
> bring an ineffective assistance claim in a § 2255 would create a large
> exception to the scope of § 2255 waivers. In fact, such an exception
> would render all such waivers virtually meaningless because most
> habeas challenges can be pressed into the mold of a Sixth
> Amendment claim on collateral review. The Fifth Circuit has
> recognized this dynamic by noting that '[i]f all ineffective assistance
> of counsel claims were immune from waiver, any complaint about
> process could be brought in a collateral attack by merely challenging
> the attorney's failure to achieve the desired result. A knowing and
> intelligent waiver should not be so easily evaded.' United States v.
> White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-

attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v.

Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction.  Braxton, 358

F. Supp. 2d at 503, n. 2.  Finally, the Braxton Court found it persuasive that the majority of circuits

to have confronted this question "have held that collateral attacks claiming ineffective assistance of

counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not

relate directly to the plea agreement or the waiver, are waivable."  Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007

U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, the district court conducted a Rule 11 colloquy and the petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum of 240 months. (Plea Hearing Transcript, Dkt.# 62 at 14). His sentence was 202 months imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack the guilty plea and to file this § 2255 motion, thus precluding a review of the merits of most of its claims. Indeed, petitioner's appellate waiver was upheld on appeal by the Fourth Circuit Court of Appeals, which declined to consider his sentencing claims which fell within its scope.

However, a waiver analysis may not be dispositive of all of the issues in this petition, because petitioner has raised IAC claims regarding counsel's action or inaction at the sentencing hearing or thereafter, claims which "fall outside" of the scope of the waiver and are not barred by petitioner's waiver of the right to collaterally attack his sentence.

**C.      Ineffective Assistance of Counsel ("IAC")**

**Ground Four (e): Whether Counsel's Performance was Ineffective for Permitting Petitioner's Sentence to be Unconstitutionally Enhanced.**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective

standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner contends that counsel's representation at the sentencing hearing was ineffective, because counsel permitted his sentence to be unconstitutionally enhanced by consideration of prior state court drug convictions that raised his criminal history points and base offense levels. Petitioner claims that he "was never aware, nor instructed aboural [sic] any kind of enhancements which would raise" his base offense level.

Not only does petitioner's claim have no support in the law, the facts he alleges are not supported by the record. Petitioner signed a plea agreement that clearly stated that the maximum sentence he could receive was twenty years. When he entered his plea in open court, each and every paragraph of the plea agreement was read aloud. He then testified that: he and his counsel had reviewed the agreement before he signed it; he understood that his maximum sentence could be no more than twenty years; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the PSR was completed. Petitioner also said that he was completely satisfied with his counsel, that his lawyer had done a good job, had left nothing undone that he thought should have been done, nor had he done anything improperly.

Prior to sentencing, petitioner consulted with his attorney to discuss objections to the PSR. At the sentencing hearing, petitioner's counsel vigorously objected to the potential career criminal enhancement to petitioner's sentence that the Government was advocating. The Court, finding that petitioner's plea agreement stipulation as to the amount of drug relevant conduct created an offense level greater than the Chapter 4 career offender enhancement being considered made the issue moot, and the objection was overruled. Petitioner's claim that his sentence was unfairly enhanced because of prior state court crimes he was not sentenced for lacks merit. His sentence was enhanced because of his own stipulation in the agreement as to the amount of drug relevant conduct, and this concept was clearly explained to him before he entered his plea:

THE COURT: Do you also understand that the sentence imposed upon you in this case may be different than any estimate you or your lawyer may have arrived at?

THE DEFENDANT: Yes.

THE COURT: Sir, do you also understand that under a concept known as relevant conduct, in

determining the total offense level for sentencing purposes under the Guidelines, the Court may take into account any conduct, circumstances, and injuries relevant to the crimes for which you may be convicted?

THE DEFENDANT: Yes.

Plea hearing transcript, Dkt.# 62 at 19 - 20.

Petitioner's sentencing enhancement was a result of his own drug relevant conduct, an amount he stipulated to in order to obtain the benefits offered by the plea agreement. Further, at sentencing, despite the Government's argument in opposition, defense counsel successfully persuaded the Court not to apply a two-level enhancement for reckless endangerment during flight. However, although petitioner avoided that two-level enhancement, despite defense counsel's vigorous efforts to obtain a sentence at the lowest end of the Guideline range of 188 - 235 months, (unopposed by the Government), the Court included an extra 14 months imprisonment for defendant's flight from law enforcement during arrest. The Court commented that in consideration of "the defendant's attempt to avoid apprehension while applying the Guidelines in this case, [the Court is] not granting him the minimum." (Dkt.# 61 at 26).

Contrary to the petitioner's claim that his attorney did not object to the decision by the Court to enhance his sentence, the transcript clearly reflects that counsel, in fact, argued vigorously for the lowest possible sentence with no enhancements. (Id. at pp. 3 -9 and 15 -20). Therefore, there is absolutely no basis for finding any deficiency on the part of counsel. Petitioner has neither demonstrated that counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced by anything counsel did or did not do. Nor has he shown that had counsel done anything otherwise, that the result of the proceeding would have been any different. Because petitioner fails to make the requisite showing that his counsel's performance fell below an objective

standard of reasonableness and prejudice, or that a fundamental miscarriage of justice would occur if his claims were not considered on the merits, he cannot prove either prong of the Strickland analysis. He has failed to prove his ineffective assistance of counsel claim by the preponderance of evidence required and these claims should be denied.

2. **Ground Four (f): Whether Counsel was Ineffective for Failing to File a Notice of Appeal on Petitioner's Behalf.**

Petitioner argues that counsel was ineffective for failing to file a notice of appeal on his behalf. This claim is completely lacking in merit. The issue of whether counsel failed to file a notice of appeal has already been determined by this Court. Four hearings were held on the matter, to determine whether excusable neglect or good cause to justify the untimeliness of petitioner's notice of appeal. Ultimately, this Court ruled that "although Defendant's trial counsel credibly testified that Defendant did not ask him to file an appeal, there was a breakdown in communications and a failure of understanding between the Defendant and his trial counsel" on the issue. The Court found that there was good cause to excuse the untimely notice of appeal, granted him an extension of time for the filing, and a copy of its Order was transmitted to the Fourth Circuit Court of Appeals. (Dkt.# 57). Petitioner's appeal proceeded and the decision on it was entered on February 12, 2008.

Petitioner's claim that counsel was ineffective in this regard is unsupported by the record. The Court made no such finding. Further, even assuming *arguendo* that counsel had been ineffective, petitioner can prove no prejudice, since he was never deprived of the opportunity to have his appeal heard. This claim lacks merit and should be denied.

**Ground Five: Whether Petitioner Should be Granted Leave to File an Appeal out of Time.**

As the record clearly indicates, petitioner has long since filed his appeal and the decision on it was rendered two and a half years ago. It appears likely that, as the Government speculated, that

petitioner merely cut and pasted from another prisoner's pleadings with regard to this claim, since it has no bearing on the facts in his case. In any event, petitioner is not entitled to a second appeal and this claim should be denied.

## IV. MISCELLANEOUS MOTIONS

As part of his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. §2255, the petitioner requests as an alternative ground for relief that he be afforded an evidentiary hearing. 28 U.S.C. §2255 provides in pertinent part that

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

Thus, if it is clear from the pleadings and the files and records that the petitioner is entitled to no relief, a hearing is not necessary. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The petitioner's motion and the Government's response conclusively establish that the petitioner is entitled to no relief. Thus, he is not entitled to an evidentiary hearing.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's §2255 motion be **DENIED with prejudice** and dismissed from the docket.

Further, petitioner's request for an evidentiary hearing should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely

file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record, as applicable.

DATED: August 17, 2010

/s/ *David J. Joel*

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE